(66 Misc. Rep. 204.)

In re SIMMONS et al., Board of Water Supply (Hillview Reservoir, Section No. 1, Parcel No. 5).

(Supreme Court, Special Term, Westchester County.   February 9, 1910.)

EMINENT DOMAIN (§ 131*)—LAND TAKEN—DAMAGES—DETERMINATION.

Where a city tract comprising seven or eight acres, which had never been subdivided and was covered with trees, brush, and boulders, was sought to be condemned for a reservoir, and there was no evidence that there was any market for lots of that character, but that lots in the vicinity which had been cleared, subdivided, and improved for from 8 to 20 years had not been sold, its value was what it would be worth in the market to take and clean off, improve, lay out streets, subdivide into lots, advertise and sell the same, and to hold and pay taxes, and interest thereon, until the lots were disposed of, and not what its value was, based on the assumption that the whole tract was presently marketable as lots.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 353; Dec. Dig. § 131.*]

Application by J. Edward Simmons and others, constituting the Board of Water Supply of a certain city, for the condemnation of land for a reservoir.   Motion to set aside the report of commissioners as to the amount awarded for a specified parcel granted, and a rehearing ordered before new commissioners.

Francis K. Pendleton and H. T. Dykman, for petitioners.
Joseph A. Flannery, for claimant.

TOMPKINS, J.  Here is a tract of seven or eight acres that has never been subdivided, and no part of which has been sold, through which no street has been laid out, and the photographs show it to be all covered with trees, brush, and boulders.  The claimants' witnesses were allowed to fix a value on each separate 25-foot lot, on a map by which a proposed subdivision of the property was shown, and the commissioners evidently made their award upon the theory that the whole property was immediately available and marketable as lots.

I can find no evidence that justified the commissioners in finding that the property, at the time the city acquired it, was marketable as lot property.  While the claimants had a right to show that the property might be subdivided, and in time become valuable as lot property, yet it was the market value at the time it was taken by the city that the claimants are entitled to be awarded, and not what it may be worth at some time in the future, when it may be subdivided, and when there may be a demand and a market for the lots into which it is then subdivided.  There was no evidence that there was any demand or any market for lots in this rough place of woodland at the time it was taken by the city in this proceeding.  On the contrary, there was proof that several tracts of land in that vicinity that had been cleared and subdivided and improved 8, 10, 15, and even 20 years before, had not been sold out, and these properties were nearer trolley and steam railroad lines, and more desirable for building purposes than the claimants' property.  For instance, Lincoln Park, opened in 1887, had sold

100 lots out of 446 at the time of the hearing. In the condition that this property was in at the time it was taken, the values given by the claimants' witnesses and the value fixed by the commissioners should have been what the whole tract was worth in the market, to take and clean off, improve and lay out streets, and subdivide into lots, and advertise and sell the lots, and to hold and pay the taxes and interest upon, until the lots were all disposed of, and not a value based upon the assumption that the whole tract was then marketable as lots.

That must have been the theory upon which the commission acted, because the claimants' witness Metcalf testified that the average acreage value was $6,500, making the whole tract worth $48,857.50; whereas, the commissioners awarded the sum of $76,200. It seems to me that the commissioners proceeded upon an erroneous theory and made an excessive award, and this case seems parallel to the case of Parcels Nos. 1 and 3, Hillview No. 1 (117 N. Y. Supp. 64), in which I set aside the report of the commissioners. The reasons given by me at that time seem to apply with equal force to the questions now presented.

Motion to set aside the report as to parcel No. 5 is granted, and a rehearing is ordered before new commissioners.